

FILED
U.S DISTRICT COURT
DISTRICT OF MARYLAND

2013 APR -1  A II: 35

U.S. Department of Justice

*United States Attorney*
*District of Maryland*
*Northern Division*

---

| | | |
|---|---|---|
| *Rod J. Rosenstein*<br>*United States Attorney*<br>*Mark W. Crooks*<br>*Assistant United States Attorney* | *36 South Charles Street*<br>*Fourth Floor*<br>*Baltimore, Maryland 21201* | *DIRECT: 410-209-4867*<br>*MAIN: 410-209-4800*<br>*FAX: 410-962-3091*<br>*Mark.Crooks@usdoj.gov* |

March 7, 2013

Gary Proctor, Esq.
8 East Mulberry St
Baltimore, MD 21202

Re:     United States v. ~~Jeremy Naughton~~, et al - JFM-12-229
                         Charles Anderson

Dear Mr. Proctor:

This letter, together with the Sealed Supplement, confirms the plea agreement which has been offered to the Defendant by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have him execute it in the spaces provided below. If this offer has not been accepted by March 19, 2013, it will be deemed withdrawn. The terms of the agreement are as follows:

## Offense of Conviction

1.     The Defendant agrees to plead guilty to Count One of the ~~Second~~ Third Superseding Indictment now pending against him, which charges him **Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion**, in violation of 18 U.S.C. § 1594(c). The Defendant admits that he is, in fact, guilty of that offense and will so advise the Court.

## Elements of the Offenses

2.     The elements of the offenses to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

### Conspiracy to Commit Sex Trafficking by Force, Fraud and Coercion:

First, that there was an agreement among two or more people to commit sex trafficking by force, fraud or coercion, as charged in the ~~Second~~ Third Superseding Indictment; and

Gary Proctor, Esq.
March 7, 2013
Page 2

Second, that the defendant knowingly and willfully became a member of that conspiracy.

## Penalties

3.     The maximum sentence provided by statute for the offense to which the Defendant is pleading guilty is as follows: life in prison, a fine of $250,000 and five years of supervised release;  In addition, the Defendant must pay $100 as a special assessment pursuant to 18 U.S.C. § 3013, which will be due and should be paid at or before the time of sentencing.  This Court may also order him to make restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.[1]  If a fine or restitution is imposed, it shall be payable immediately, unless, pursuant to 18 U.S.C. § 3572(d), the Court orders otherwise.  The Defendant understands that if he  serves a term of imprisonment, is released on supervised release, and then violates the conditions of his supervised release, his supervised release could be revoked - even on the last day of the term - and the Defendant could be returned to custody to serve another period of incarceration and a new term of supervised release.  The Defendant understands that the Bureau of Prisons has sole discretion in designating the institution at which the Defendant will serve any term of imprisonment imposed.

## Waiver of Rights

4.     The Defendant understands that by entering into this agreement, he surrenders certain rights as outlined below:

a.     If the Defendant had persisted in his plea of not guilty, he would have had the right to a speedy jury trial with the close assistance of competent counsel.  That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

b.     If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community.  Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily.  All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count.  The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

c.     If the Defendant went to trial, the government would have the burden

---

[1]     Pursuant to 18 U.S.C. § 3612, if the Court imposes a fine in excess of $2,500 that remains unpaid 15 days after it is imposed, the Defendant shall be charged interest on that fine, unless the Court modifies the interest payment in accordance with 18 U.S.C. § 3612(f)(3).

Gary Proctor, Esq.
March 7, 2013
Page 3

of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in his defense, however, he would have the subpoena power of the Court to compel the witnesses to attend.

    d.  The Defendant would have the right to testify in his own defense if he so chose, and he would have the right to refuse to testify. If he chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from his decision not to testify. ·

    e.  If the Defendant were found guilty after a trial, he would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the charges against him. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

    f.  By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that he may have to answer the Court's questions both about the rights he is giving up and about the facts of his case. Any statements the Defendant makes during such a hearing would not be admissible against him during a trial except in a criminal proceeding for perjury or false statement.

    g.  If the Court accepts the Defendant's plea of guilty, there will be no further trial or proceeding of any kind, and the Court will find him guilty.

    h.  By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status or the right to own or possess a firearm.

<u>Advisory Sentencing Guidelines Apply</u>

    5.  The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. §§ 3551-3742 (excepting 18 U.S.C. §§ 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

Gary Proctor, Esq.
March 7, 2013
Page 4

## Factual and Advisory Guidelines Stipulation

6.      This Office and the Defendant understand, agree and stipulate to the Statement of Facts attached as Exhibit A which this Office would prove beyond a reasonable doubt, and to the following applicable sentencing guidelines factors:

a.      The base offense level is **30**.  U.S.S.G. § 2G1.1(c) cross-referencing to U.S.S.G. §2A3.1.

b.      There is a 2-level increase because the offense involved the physical restraint of a victim.  U.S.S.G. § 3A1.3.

c.      The offense involved more than one victim and therefore Chapter Three, Part  D (Multiple Counts) applies here.  There is a 5-level increase because the offense involved the trafficking and assault of multiple (more than 5) victims.  See U.S.S.G.§ 3D1.4.  Accordingly, the total  offense level for Count One is **37**.

d.      This Office does not oppose a 2-level reduction in the Defendant's adjusted offense level, based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for his criminal conduct.  This Office agrees to make a motion pursuant to U.S.S.G. § 3E1.1(b) for an additional 1-level decrease in recognition of the Defendant's timely notification of his intention to plead guilty.  This Office may oppose *any* adjustment for acceptance of responsibility if the Defendant (a) fails to admit each and every item in the factual stipulation; (b) denies involvement in the offense; (c) gives conflicting statements about his involvement in the offense; (d) is untruthful with the Court, this Office, or the United States Probation Office; (e) obstructs or attempts to obstruct justice prior to sentencing; (f) engages in any criminal conduct between the date of this agreement and the date of sentencing; or (g) attempts to withdraw his plea of guilty.

e.      Thus,  the final adjusted offense level for Count One is **34** (after acceptance of responsibility).

7.      The Defendant understands that there is no agreement as to his criminal history or criminal history category, and that his criminal history could alter his offense level if he is a career offender or if the instant offense was a part of a pattern of criminal conduct from which he  derived a substantial portion of his income.

8.      This Office and the Defendant agree that with respect to the calculation of the advisory guidelines range,  no other offense characteristics, sentencing guidelines factors, potential

Gary Proctor, Esq.
March 7, 2013
Page 5

departures or adjustments set forth in the United States Sentencing Guidelines will be raised or are in dispute.

## Obligations of the United States Attorney's Office

9.     At the time of sentencing, this Office will recommend a sentence within the guidelines determined to be applicable by the Court. At the time of sentencing, this Office will move to dismiss the remaining open counts against the Defendant.

10.     The parties reserve the right to bring to the Court's attention at the time of sentencing, and the Court will be entitled to consider, all relevant information concerning the Defendant's background, character and conduct, including the conduct that is the subject of the counts of the Second Superseding Indictment that this Office has agreed to dismiss at sentencing.

## Waiver of Appeal

11.     The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed, including any fine, term of supervised release, or order of restitution and any issues that relate to the establishment of the advisory guidelines range. Nothing in this agreement shall be construed to prevent either the Defendant or this Office from invoking the provisions of Federal Rule of Criminal Procedure 35(a), and appealing from any decision thereunder, should a sentence be imposed that is illegal or that exceeds the statutory maximum allowed under the law or that is less than any applicable statutory mandatory minimum provision. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Obstruction or Other Violations of Law

12.     The Defendant agrees that he will not commit any offense in violation of federal, state or local law between the date of this agreement and his sentencing in this case. In the event that the Defendant (i) engages in conduct after the date of this agreement which would justify a finding of obstruction of justice under U.S.S.G. § 3C1.1, or (ii) fails to accept personal responsibility for his conduct by failing to acknowledge his guilt to the probation officer who prepares the Presentence Report, (iii) moves to withdraw his guilty plea or (iv) commits any offense in violation of federal, state or local law, then this Office will be relieved of its obligations to the Defendant as reflected in this agreement. Specifically, this Office will be free to argue sentencing guidelines factors other than those stipulated in this agreement, and it will also be free to make sentencing recommendations other than those set out in this agreement. As with any alleged breach of this agreement, this Office will bear the burden of convincing the Court of the Defendant's

Gary Proctor, Esq.
March 7, 2013
Page 6

obstructive or unlawful behavior and/or failure to acknowledge personal responsibility by a preponderance of the evidence. The Defendant acknowledges that he may not withdraw his guilty plea because this Office is relieved of its obligations under the agreement pursuant to this paragraph.

## Restitution

13.     The Defendant agrees to the entry of a Restitution Order for the full amount of the victims' losses. The Defendant agrees that, pursuant to 18 U.S.C. §§ 3663 and 3663A and §§ 3563(b)(2) and 3583(d), the Court may order restitution of the full amount of the actual, total loss caused by the offense conduct set forth in the factual stipulation. The Defendant further agrees that he will fully disclose to the probation officer and to the Court, subject to the penalty of perjury, all information, including but not limited to copies of all relevant bank and financial records, regarding the current location and prior disposition of all funds obtained as a result of the criminal conduct set forth in the factual stipulation. The Defendant further agrees to take all reasonable steps to retrieve or repatriate any such funds and to make them available for restitution. If the Defendant does not fulfill this provision, it will be considered a material breach of this plea agreement, and this Office may seek to be relieved of its obligations under this agreement.

## Court Not a Party

14.     The Defendant expressly understands that the Court is not a party to this agreement. In the federal system, the sentence to be imposed is within the sole discretion of the Court. In particular, the Defendant understands that neither the United States Probation Office nor the Court is bound by the stipulation set forth above, and that the Court will, with the aid of the Presentence Report, determine the facts relevant to sentencing. The Defendant understands that the Court cannot rely exclusively upon the stipulation in ascertaining the factors relevant to the determination of sentence. Rather, in determining the factual basis for the sentence, the Court will consider the stipulation, together with the results of the presentence investigation, and any other relevant information. The Defendant understands that the Court is under no obligation to accept this Office's recommendations, and the Court has the power to impose a sentence up to and including the statutory maximum stated above. The Defendant understands that if the Court ascertains factors different from those contained in the stipulation set forth above, or if the Court should impose any sentence up to the maximum established by statute, the Defendant cannot, for that reason alone, withdraw his guilty plea, and will remain bound to fulfill all of his obligations under this agreement. The Defendant understands that neither the prosecutor, his counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

6

Gary Proctor, Esq.
March 7, 2013
Page 7


### Entire Agreement

15.      This letter supersedes any prior understandings, promises, or conditions
between this Office and the Defendant and, together with the Sealed Supplement, constitutes the
complete plea agreement in this case.  The Defendant acknowledges that there are no other
agreements, promises, undertakings or understandings between the Defendant and this Office
other than those set forth in this letter and the Sealed Supplement and none will be entered into
unless in writing and signed by all parties.

If the Defendant fully accepts each and every term and condition of this agreement, please
sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Rod J. Rosenstein
United States Attorney

By:_____

Mark W. Crooks
Paul Budlow
Assistant United States Attorneys

I have read this agreement, including the Sealed Supplement,  and carefully reviewed
every part of it with my attorney.  I understand it, and I voluntarily agree to it.  Specifically, I
have reviewed the Factual and Advisory Guidelines Stipulation with my attorney, and I do not
wish to change any part of it.  I am completely satisfied with the representation of my attorney.

3-21-13
_____
Date

Charles Anderson
_____
Charles Anderson

I am Charles Anderson's attorney.  I have carefully reviewed every part of this agreement,
including the Sealed Supplement, with him.  he advises me that he  understands and accepts its
terms.  To my knowledge, his decision to enter into this agreement is an informed and voluntary
one.

3-21-13
_____
Date

Gary Proctor, Esq.
_____
Gary Proctor, Esq.

**Attachment A**



Factual Stipulation

*If this matter had proceeded to trial, the government would have proven the following 35 beyond a reasonable doubt. The Defendant agrees that the following facts are true and that they do not encompass all of the facts that would have been proven had this matter proceeded to trial.*

Defendant **CHARLES ANDERSON**, a/k/a "**Chuck Corners**," a/k/a "**Yowzer**," ("**ANDERSON**"), is a resident of Brooklyn, New York, where he was born in 1987. Jeremy Naughton (aka "Jerms Black"), a long-time friend of **ANDERSON**, targeted female prostitutes, who were between the ages of 19 and 28 (whose initials are S.G., M.B., R.P., N.F., M.S., K.S., J.H. and S.H.) to engage in commercial sex acts in order to make money. **ANDERSON** agreed to assist Naughton in the myriad following ways:

**ANDERSON** helped Naughton locate female prostitutes that were working alone (i.e., without the oversight of a pimp) by searching *craiglist.com, backpage.com* and other related websites that hosted advertisements for commercial sex services. **ANDERSON** agreed to call or text message the telephone numbers listed in the advertisements, masquerading as a prospective client, and thereby helped Naughton to schedule a hotel "date" with prostitutes. On other occasions, **ANDERSON** agreed to loan his cellular phone to Naughton such that Naughton could call the prostitutes directly from an unrecognized telephone number. **ANDERSON** assisted Naughton in these manners while knowing that Naughton intended forcibly to coerce the girls to work for Naughton as his prostitutes.

**ANDERSON** witnessed Naughton return to the apartment that **ANDERSON** and Naughton shared (332 Marcus Garvey Boulevard, Brooklyn, New York - Apt. 2R) ("the Marcus Garvey apartment") with female prostitutes that were brought to that location by Naughton against their will. **ANDERSON** observed that the females involuntarily stayed in Naughton's room, where **ANDERSON** sometimes overheard Naughton physically assaulting the females and forcing them to perform sex acts. → *at least 2*

On one occasion in the Spring of 2010, Naughton returned to the Marcus Garvey apartment with a Caucasian female prostitute whom Naughton had brought there against her will, while 3 additional females were already detained against their will within Naughton's bedroom. **ANDERSON** had agreed to monitor the 3 involuntary detainees/females while Naughton traveled for approximately six hours in search of an additional female prostitute in Maryland. → *at least 2*    *GA CA true*

On other occasions, **ANDERSON** agreed to monitor female prostitutes for Naughton while Naughton left the apartment, understanding that his presence in the apartment would deter the detainees from fleeing the apartment. Naughton sometimes instructed **ANDERSON** in the female victims' presence to "keep an eye on" the female detainees.

-1-

Naughton described for **ANDERSON** his attempts to also abduct females by other means; chiefly, driving alongside them in his black Dodge Charger and physically forcing them into his vehicle.

**ANDERSON** observed that Naughton had some of his female victims perform "incall dates" (serving clients in the common area of living room of the Marcus Garvey apartment) while both Naughton and **ANDERSON** were present inside the apartment, remaining in Naughton's adjoining bedroom.

On more than one occasion, a female prostitute victim escaped from Naughton. **ANDERSON** agreed to assist Naughton in locating fleeing prostitutes during their immediate flight. Specifically, **ANDERSON** called the females from both his cellular phone and the Marcus Garvey apartment land-line that was in **ANDERSON**'s name, in an effort to determine the direction of the female victims' flight.

**ANDERSON** observed that Naughton maintained two firearms in the Marcus Garvey apartment, a .9mm pistol and a larger sub-machine gun, along with corresponding ammunition.

At various times, including when Naughton was incarcerated in Maryland in the Spring of 2010, **ANDERSON** agreed to hold and maintain female prostitutes earnings, which he later provided to Naughton. These prostitutes both received clients inside the Marcus Garvey apartment and attended "outcall dates" (commercial sex at locations outside of the apartment).

I have read this Statement of Facts and have carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I do not wish to change any part of it.

3-21-13
_____
Date

Charles Anderson
_____
Charles **ANDERSON**

I am Charles **ANDERSON**'s attorney. He has read this Statement of Facts. In addition, I have carefully reviewed every part of this Statement of Facts with him. To my knowledge, his decision to sign it is a voluntary one.

3-21-13
_____
Date

_____
Gary Proctor, Esq.

-2-